Joseph W. Cotchett
(SBN 36324; jcotchett@cpmlegal.com)
Barbara L. Lyons
(SBN 173548; blyons@cpmlegal.com)
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Daniel G. Cooper
(SBN 153576; cleanwater@sfo.com)
**LAWYERS FOR CLEAN WATER, INC.**
1004-A O'Reilly Avenue
San Francisco, CA 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Robert F. Kennedy, Jr.
(*Pro Hac Vice*; mpostman@law.pace.edu)
KEVIN J. MADONNA
(*Pro Hac Vice*;
kmadonna@kennedymadonna.com)
**KENNEDY & MADONNA, LLP**
48 Dewitt Mills Road
Hurley, NY 12443
Telephone: (845) 331-7514
Facsimile: (845) 331-7578

Attorneys for Plaintiffs

**LATHAM & WATKINS LLP**
Karl S. Lytz (SBN 110895)
Richard W. Raushenbush (SBN 134983)
Benjamin J. Horwich (SBN 249090)
Randi L. Wallach (SBN 241171)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email:
Karl.Lytz@lw.com
Richard.Raushenbush@lw.com
Benjamin.Horwich@lw.com
Randi.Wallach@lw.com

Attorneys for Defendant
PACIFICORP, INC., an Oregon Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**HOWARD McCONNELL; LEAF G. HILLMAN; ROBERT ATTEBERY; FRANKIE JOE MYERS; TERANCE J. SUPAHAN; MICHAEL T. HUDSON; BLYTHE REIS**; and **KLAMATH RIVERKEEPER**, a project of **KLAMATH FOREST ALLIANCE**, etc.,

Plaintiffs,

v.

**PACIFICORP, INC.**, an Oregon Corporation;

Defendant.

Case No. C 07-02382 WHA

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

Date: August 16, 2007
Time: 8:00 a.m.
Courtroom: 9
Judge: Hon. William H. Alsup

LAW OFFICES COTCHETT, PITRE & McCARTHY

# TABLE OF CONTENTS

Page

1. JURISDICTION AND SERVICE. .......... 1
2. FACTS. .......... 1
   a. Undisputed Facts. .......... 1
   b. Facts in Dispute .......... 3
      i. Plaintiffs' Statement of Additional Facts .......... 3
      ii. PacifiCorp's Denials for Lack of Information or Belief. .......... 4
      iii. Agreed Statement of Disputed Facts. .......... 4
3. LEGAL ISSUES. .......... 5
   a. Whether Plaintiffs can prove each element of each of their claims. .......... 5
   b. Whether PacifiCorp can prove any of its affirmative defenses. .......... 5
   c. The amount of Plaintiffs' damages. .......... 6
   d. The form of injunctive relief to be ordered (if any). .......... 6
   e. Whether punitive damages are an available remedy. .......... 6
      i. Plaintiffs' Position. .......... 6
      ii. Defendant's Position. .......... 6
   f. Whether this Court should grant PacifiCorp's pending motions to dismiss and/or stay. .......... 6
      i. Whether the Federal Power Act ("FPA") deprives this Court of jurisdiction over plaintiffs' state law claims for injunctive relief. .......... 6
         A. Plaintiffs' Position. .......... 6
         B. Defendant's Position. .......... 7
      ii. Whether plaintiffs' failure to exhaust administrative remedies in the pending FERC re-licensing proceeding deprives this Court of jurisdiction over their injunctive relief claims. .......... 7
         A. Plaintiffs' Position. .......... 7
         B. Defendant's Position. .......... 7
      iii. Whether Plaintiffs' state law claims for injunctive relief are preempted. .......... 7
         A. Plaintiffs' Position. .......... 7
         B. Defendant's Position. .......... 8

LAW OFFICES
COTCHETT, PITRE & MCCARTHY

iv. Whether the fact that PacifiCorp operates its dams pursuant to a conditional FERC license invalidates plaintiffs' state law nuisance claims. . . . . 8
A. Plaintiffs' Position. . . . . 8
B. Defendant's Position. . . . . 9

v. Whether plaintiffs fail to state a claim for relief under Cal. Bus. & Prof. Code § 17200 *et seq.* . . . . . 9
A. Plaintiffs' Position. . . . . 9
B. Defendant's Position. . . . . 9

vi. Whether the Court should dismiss or stay the case based on the doctrine of primary jurisdiction. . . . . 10
A. Plaintiffs' Position. . . . . 10
B. Defendant's Position. . . . . 10

g. Whether any Plaintiff has a property right in fish found in the Klamath River. . . . . 10

**4. MOTIONS. . . . . 11**

**5. AMENDMENT OF PLEADINGS. . . . . 11**
a. Plaintiffs' Statement. . . . . 11
b. Defendant's Statement. . . . . 11

**6. EVIDENCE PRESERVATION. . . . . 11**
a. Plaintiffs' Statement. . . . . 11
b. Defendant's Statement. . . . . 12

**7. DISCLOSURES. . . . . 12**
a. Plaintiffs' Position. . . . . 12
b. Defendant's Position. . . . . 12

**8. DISCOVERY. . . . . 12**

**9. CLASS ACTIONS. . . . . 13**

**10. RELATED CASES. . . . . 13**
a. Plaintiffs' Position. . . . . 13
b. Defendant's Position. . . . . 13

**11. RELIEF. . . . . 13**
a. Plaintiffs' Position. . . . . 13
b. Defendant's Position. . . . . 13

12. **SETTLEMENT AND ADR.** .......... **14**
   a. Plaintiffs' Position. .......... 14
   b. Defendant's Position. .......... 14

13. **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES.** .......... **14**
   a. Plaintiffs' Position. .......... 14
   b. Defendant's Position. .......... 14

14. **OTHER REFERENCES.** .......... **14**

15. **NARROWING OF ISSUES.** .......... **15**

16. **EXPEDITED SCHEDULE.** .......... **15**
   a. Plaintiffs' Position. .......... 15
   b. Defendant's Position. .......... 15

17. **SCHEDULING.** .......... **16**
   a. Plaintiffs' Position re: Status Conference. .......... 16
   b. Defendant's Position re: Status Conference. .......... 16

18. **TRIAL.** .......... **16**
   a. Jury Trial. .......... 16
   b. Length of Trial. .......... 16
      i. Plaintiffs' Position. .......... 16
      ii. Defendant's Position. .......... 16

19. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.** .......... **17**
   a. Plaintiffs. .......... 17
   b. Defendant. .......... 17

# JOINT CASE MANAGEMENT CONFERENCE STATEMENT

The parties in the above-entitled action submit this Joint Report Pursuant to Federal Rule of Civil Procedure 26(f) and Civil Local Rule 16-9. Joseph W. Cotchett and Barbara L. Lyons, counsel for Plaintiffs, and Richard W. Raushenbush, counsel for Defendant, met telephonically on July 13, 2007 and discussed the matters set forth herein. Based on that meeting, the parties hereby report to the Court as follows:

## 1. JURISDICTION AND SERVICE.

PacifiCorp does not contest either personal jurisdiction or venue, but does contest the Court's subject matter jurisdiction. PacifiCorp filed its Motion to Dismiss for Lack of Jurisdiction and for Judgment on the Pleadings (Doc. 15), and Motion to Stay (Doc. 16), together with a Request for Judicial Notice (Doc. 17) and Declaration of counsel in support of the request for judicial notice (Doc. 18) on July 12, 2007. Plaintiffs filed their opposition papers (Docs. 26-30) on July 26, 2007, and PacifiCorp filed its reply papers (Docs. 39-40) on August 2, 2007. Those motions are set for hearing on August 16, 2007.

## 2. FACTS.

a. Undisputed Facts.

i. PacifiCorp owns and operates the Iron Gate, Copco 1 and Copco 2 hydroelectric dams on the Klamath River.

ii. PacifiCorp's Federal Energy Regulatory Commission ("FERC") License Number 2082 for the Klamath dams expired on February 28, 2006, and PacifiCorp is currently operating the dams subject to an annual license while FERC considers its 2004 relicensing application.

iii. PacifiCorp's hydroelectric dams are currently the subject of an extensive, contested FERC re-licensing proceeding. PacifiCorp filed its application for a new FERC license on February 24, 2004. Thirty-four entities have intervened in the FERC re-licensing proceedings, including federal and state fish and wildlife agencies, environmental organizations, commercial fishermen's associations, and Indian tribes. In addition, the California State Water Resources Control Board is reviewing PacifiCorp's request for certification of the dam

relicensing pursuant to section 401 of the federal Clean Water Act (16 U.S.C. § 803). Other agencies, including the United States Fish and Wildlife Service and the National Marine Fisheries Service, and the Bureau of Land Management, also have the authority to impose conditions on any new FERC license.

iv. FERC has prepared a draft Environmental Impact Statement that includes study of water quality issues raised by Plaintiffs in this action, including blue-green algae, temperature, dissolved oxygen levels, and pH, and the impacts of water quality on anadromous fish resources. Each of these issues will be addressed in the new license for such dams; however, the parties disagree on the issue of whether FERC itself can or will decide those matters.

v. In that connection, PacifiCorp has filed applications with the California State Resources Control Board and the Oregon Department of Environmental Quality for Clean Water Act § 401 certifications, which are a prerequisite to FERC relicensing. Although these proceedings also will address water quality issues, including blue-green algae growth, they will not determine as a matter of law whether the contamination of which Plaintiffs complain constitutes a common law nuisance or trespass, and will not result in any compensation to Plaintiffs for the damages Plaintiffs allegedly suffered because of toxic microcystins from *Microcystis aeruginosa* in the reservoirs above the Iron Gate and Copco dams.

vi. The Yurok Indian Tribe (of which Plaintiffs McConnell, Attebury and Myers are members) the Karuk Tribe of California (of which Plaintiffs Hillman and Supahan are members), and the Pacific Coast Federation of Fishermen's Associations (of which Plaintiff Hudson is a Director) all are intervenors in the FERC proceedings. In addition Plaintiffs Blythe Reis (as co-owner of the Sandy Bar Ranch) and Klamath Riverkeeper have commented on the draft Environmental Impact Statement. However, no Plaintiff is an intervenor before FERC in his or her individual capacity. In addition, the parties agree that FERC will not address Plaintiffs' claims for damages, but disagree on the issue of whether FERC possess authority to provide Plaintiffs any remedy on their common law claims.

///

///

b. Facts in Dispute.

i. Plaintiffs' Statement of Additional Facts. In addition to the matters stated above, Plaintiffs contend that:

A. The plaintiffs in this action are: members of the Yurok and Karuk tribes who live adjacent to, fish commercially or for subsistence on the Klamath River, and/or use the Klamath for ceremonial purposes; a Klamath River river recreation business owner; a citizens' group dedicated to the use, enjoyment and preservation of the Klamath; and a commercial salmon fisherman.

B. Plaintiffs contend that Defendant PacifiCorp has created and permitted to persist conditions above the Iron Gate and Copco dams that promote the growth of toxic *microcystis aeruginosa* ("MSAE" or "blue-green algae") and the release of associated microcystins into the lower Klamath.

C. Plaintiffs further contend that the blue-green algae and microcystin are have caused damage to the Klamath salmon fishery and those who fish for subsistence, commercial and recreational purposes; and poses a threat to human health and by extension, Native American cultural uses of the river.

D. According to the FERC's draft Environmental Impact Statement in the relicensing proceeding, the water quality issues of blue-green algae, temperature, dissolved oxygen levels, and pH, "originate in the reservoirs associated with" the Iron Gate and Copco dams and could be addressed by removal of those dams.

E. It will be state officials, not FERC, that will ultimately address water quality issues in the course of Clean Water Act § 401 proceedings.

F. No Plaintiff in this suit is an intervenor in the FERC dam relicensing proceeding, and FERC lacks authority to grant any Plaintiff any relief on their common law claims herein.

///

///

///

ii. PacifiCorp's Denials for Lack of Information or Belief.

PacifiCorp answered the Complaint on June 19, 2007. As reflected in PacifiCorp's June 19, 2007 Answer (Doc. 10), PacifiCorp contends that it is without sufficient information or belief to verify Plaintiffs' allegations that:

> The plaintiffs in this action are: members of the Yurok and Karuk tribes who live adjacent to, fish commercially or for subsistence on the Klamath River, and/or use the Klamath for ceremonial purposes; a Klamath River river recreation business owner; a citizens' group dedicated to the use, enjoyment and preservation of the Klamath; and a commercial salmon fisherman.

iii. Agreed Statement of Disputed Facts.

The principal facts in dispute in this case are:

A. Whether *microcystis aeruginosa* ("MSAE" or "blue-green algae") blooms occur upstream of the Iron Gate and Copco reservoirs,

B. The concentrations of MSAE found in the reservoirs behind the Iron Gate and Copco dams.

C. Whether any MSAE blooms are caused PacifiCorp's operation of its hydroelectric dams, and in that connection:

(1) Whether PacifiCorp's operations promote the growth of MSAE by causing elevated temperature levels above the Iron Gate and/or Copco dams; and

(2) Whether PacifiCorp's operations promote the growth of MSAE by causing reduced oxygen levels above the Iron Gate and/or Copco dams.

D. Whether MSAE blooms would occur at levels sufficient to cause the contamination of which Plaintiffs complain even in the absence of PacifiCorp's hydroelectric dams.

E. If MSAE blooms and microcystin are caused by PacifiCorp's operation of its hydroelectric dams, then whether such blooms and microcystin:

(1) Have caused a significant reduction in the Klamath fishery population; and/or

(2) Pose a threat to human health.

///

F. Whether any Plaintiff has suffered any damages as a result of PacifiCorp's conduct.

G. Whether any MSAE blooms or microcystin caused by PacifiCorp's hydroelectric dams has: (1) trespassed on any Plaintiff's lands; (2) created a private nuisance on any Plaintiff's lands; (3) created a public nuisance; or (4) caused damages to any Plaintiff.

H. Whether PacifiCorp's operation of the Iron Gate and Copco dams has complied with the relevant portions of its FERC license.

I. When Plaintiffs first knew of their claimed injuries.

J. Whether any impacts from PacifiCorp's operations of the Iron Gate and Copco dams on water quality can be reasonably abated without losing the benefit of the hydroelectric power from such dams.

K. Whether all of the issues raised by Plaintiffs in this action have been raised before FERC as part of the re-licensing proceeding.

## 3. LEGAL ISSUES.

With the exception of ¶ 3.g, below, the parties agree that the principal legal issues in this case are:

a. Whether Plaintiffs can prove each element of each of their claims.

b. Whether PacifiCorp can prove any of its affirmative defenses.

c. The amount of Plaintiffs' damages.

d. The form of injunctive relief to be ordered (if any).

e. Whether punitive damages are an available remedy.

i. Plaintiffs' Position. The Federal Power Act does not bar punitive damages, and in fact expressly conditions all hydropower licenses on the licensee being responsible for damages from its operations. 16 U.S.C. § 803(c).

ii. Defendant's Position. PacifiCorp's operation of its hydroelectric dams pursuant to a duly-issued FERC license under the FPA cannot be the basis for punitive damages.

///

///

f. Whether this Court should grant PacifiCorp's pending motions to dismiss and/or stay.

i. Whether the Federal Power Act ("FPA") deprives this Court of jurisdiction over plaintiffs' state law claims for injunctive relief.

A. Plaintiffs' Position. The state law claims asserted in this action are outside of the scope of FERC jurisdiction. In particular: (1) this suit does not arise under the Federal Power Act; (2) FERC has only such authority as Congress has granted it under the Federal Power Act; (3) FERC has no jurisdiction over the trespass, nuisance, negligence and unfair business practices claims Plaintiffs allege; (3) the Federal Power Act provides no civil remedy for the claims Plaintiffs assert; (4) the Federal Power Act expressly requires hydroelectric dam operators to take responsibility for damage caused by their operations (16 U.S.C. § 803(c)); (5) because *state* water quality certification of new hydroelectric projects is mandatory (33 U.S.C. § 1341), FERC does not have exclusive jurisdiction over the contamination issues that are the subject of Plaintiffs' complaint; and (6) no state agency has authority to adjudicate the claims that are the subject of this suit or provide the remedies sought. Defendant admits that FERC does not have jurisdiction over Plaintiffs' damage claims. (Motion to Dismiss (Doc. 15) at pp. 7, 12, 21.)

B. Defendant's Position. The Federal Power Act ("FPA") —which provides for exclusive review of FERC licensing decisions in the Courts of Appeals, *see* 16 U.S.C. § 825*l*(b)—deprives this Court of jurisdiction over plaintiffs' state law claims for injunctive relief that would impose new operating conditions on the Project, which is regulated by an existing FERC license and is subject to a pending FERC re-licensing proceeding. *See, e.g., Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989).

ii. Whether plaintiffs' failure to exhaust administrative remedies in the pending FERC re-licensing proceeding deprives this Court of jurisdiction over their injunctive relief claims.

A. Plaintiffs' Position. There can be no administrative exhaustion requirement when there is no available administrative remedy, and FERC both lacks exclusive jurisdiction over the water contamination issues that give rise to Plaintiffs' claims and lacks

jurisdiction to supply a civil remedy. *See United States v. Southern California Edison Co.*, 300 F.Supp.2d 964, 981 (E.D. Cal. 2004).

B. Defendant's Position. Plaintiffs' failure to exhaust administrative remedies in the pending FERC re-licensing proceeding deprives this Court of jurisdiction over their injunctive relief claims, which seek to impose new operating conditions on the Project. *See, e.g., Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).

iii. Whether Plaintiffs' state law claims for injunctive relief are preempted.

A. Plaintiffs' Position. Congress has not occupied the field of water contamination abatement via the Federal Power Act. FERC looks to the appropriate state agency to provide a Clean Water Act § 401 certification. 33 U.S.C. § 1341(a); *Public Utility District No. 1 of Jefferson County v. Washington Department of Ecology*, 511 U.S. 700, 711-712, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994); *S.D. Warren Co. v. Maine Board of Environmental Protection*, 126 S.Ct. 1843, 164 L.Ed.2d 625 (2006). Pursuant to § 401, a state may: (a) indirectly deny a federal hydropower permit by withholding certification (33 U.S.C. § 1341(a)); or (b) impose conditions on that certification (33 U.S.C. § 1341(d)). In addition, PacifiCorp has not cited any provision of any existing license with which state law remedies would conflict, nor has it established that this action would prevent FERC from completing its relicensing review.

The FPA's hydropower licensing provisions do not preempt state common law remedies or otherwise encroach upon the states' historic powers to enact laws to protect the health and safety of their residents. Congressional intent, expressed in part in 16 U.S.C. § 803(c), is directly to the contrary, requiring FERC licensees, as a condition to their licenses, to accept responsibility for damages they inflict on others. *See Nez Pierce Tribe v. Idaho Power Co.*, 847 F.Supp. 791, 804 (D. Id. 1994). Moreover, as acknowledged in *Sayles Hydro Associates v. Maughan*, 985 F.2d 451, 454 (9th Cir. 1993), 16 U.S.C. § 821 reserves to the states the power over "the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.'" Both of PacifiCorp's cases, *California v. FERC* and *Sayles Hydro*, concern the scope of the FPA's appropriative rights savings clause, not the section 401

certification process. In addition, both of those cases *precede PUD of Jefferson County* and *S.D. Warren*, and their holdings must be read as limited to their facts.

B. Defendant's Position. Plaintiffs' state law claims for injunctive relief are preempted because the FPA occupies the field of hydropower regulation and because any injunctive relief would conflict with the existing FERC license, the ongoing FERC re-licensing proceedings and the FPA. *See, e.g., California v. FERC*, 495 U.S. 490 (1990); *Sayles Hydro Assocs. v. Maughan*, 985 F.3d 451 (9th Cir. 1993).

iv. Whether the fact that PacifiCorp operates its dams pursuant to a conditional FERC license invalidates plaintiffs' state law nuisance claims.

A. Plaintiffs' Position. PacifiCorp has not shown that the conduct complained of is done "under the express authority of a statute" as required to invoke Cal. Civ. Code § 3482. That provision of California law has been interpreted as limited to *California* statutes and municipal ordinances. *Woodruff v. North Bloomfield Gravel Mining Co.*, 18 Fed. 753, 777. 771-772 (C.C.D. Cal. 1994). In any event, PacifiCorp points to nothing in its existing conditional *federal* license that expressly permits it to: (a) pollute the waters of the Klamath River, which pollution causes damages to the Plaintiffs trespass on Plaintiffs' lands; (b) interfere with Plaintiffs' tribal traditions; or (c) expose Plaintiffs to toxic contamination that risks their health and food supply. In fact, the FERC license expressly *prohibits* PacifiCorp from preventing any person from using the waters of the Klamath for sanitary and domestic purposes, including but not limited to the Yurok's and Karuk's ceremonial uses of the river. (FERC License, Art. 19.) Finally, the California Water Board has thusfar *declined* to certify the Klamath projects.

B. Defendant's Position. Plaintiffs fail to state a claim for nuisance because PacifiCorp conducts its operations under a license issued by FERC pursuant to its statutory authority under the FPA, and because "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code § 3482; *see, e.g., Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001). Plaintiffs misinterpret PacifiCorp's FERC License.

v. Whether plaintiffs fail to state a claim for relief under Cal. Bus. & Prof. Code § 17200 *et seq*.

A. Plaintiffs' Position. For the reasons stated above, PacifiCorp has failed to show that Plaintiffs' claims for injunctive relief are barred. Therefore, Pacificorp has failed to show that it is entitled to an order dismissing Plaintiffs' Unfair Competition Law claims.

B. Defendant's Position. Plaintiffs fail to state a claim for relief under Cal. Bus. & Prof. Code § 17200 *et seq.* because they cannot identify any "money or property, real or personal, which may have been acquired" by PacifiCorp "by means of . . . unfair competition." Cal. Bus. & Prof. Code § 17203; *see, e.g., Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997 (2005). Plaintiffs admit that they have no damages claim under the Unfair Competition Law. Further, Plaintiffs' claims for injunctive relief under the Unfair Competition Law fail for the reasons stated above (*i.e.*, because the FPA provides for exclusive review of final FERC licensing decisions in the Courts of Appeal; because the claims are preempted by the FPA and FERC's authority over hydropower licenses; or because Plaintiffs failed to exhaust their administrative remedies).

vi. Whether the Court should dismiss or stay the case based on the doctrine of primary jurisdiction.

A. Plaintiffs' Position. The doctrine of primary jurisdiction does not apply, in that FERC (a) lacks jurisdiction over the water contamination issues this case presents; and (b) has no authority to order a remedy. Moreover, it is not certain that FERC will grant relicensing or if so when, and a stay pending that determination will cause irreparable harm to the Klamath environment, the river fishery, and the cultural, river-based traditions observed by plaintiffs McConnell, Hilllman, Attebery, Myers and Supahan.

B. Defendant's Position. The Court should dismiss or stay the case based on the doctrine of primary jurisdiction because all of the principal issues raised by Plaintiffs' Complaint are already being considered by FERC, in accordance with the FPA's comprehensive regulatory scheme, in the pending relicensing proceedings. *Davel Comm'ns., Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir. 2007). FERC's inability to provide monetary relief to

Plaintiffs does not make deference to FERC's primary jurisdiction inappropriate. *See Verizon Nw. v. Portland Gen. Elec.*, No. 03-1286, 2004 WL 97615 at *4 (D. Or. Jan. 13, 2004) ("[U]nder primary jurisdiction principles, a district court may defer to an agency's adjudication even if certain ultimate issues relevant to the federal court claims will remain unresolved despite the agency's decision.").

g. Whether any Plaintiff has a property right in fish found in the Klamath River.

PacifiCorp contends that whether any Plaintiff has a property right in fish found in the Klamath River is a legal issue in this case. Plaintiffs disagree.

**4. MOTIONS.**

PacifiCorp has filed both a Motion to Dismiss for Lack Of Jurisdiction and for Judgment on the Pleadings (Doc. 15), and a Motion to To Stay (Doc. 16) which are set for hearing on August 16, 2007. Plaintiffs oppose both motions. (*See* ¶ 3.f, above.)

**5. AMENDMENT OF PLEADINGS.**

a. Plaintiffs' Statement.

Plaintiffs intend to seek leave of this Court to amend their complaint to assert a claim under the Federal Solid Waste Disposal Act (also known as the Resource Conservation and Recovery Act" or "RCRA"), 42 U.S.C. § 6901 *et seq.* On June 27, 2007, Plaintiffs sent PacifiCorp a notice of intent to sue based on PacifiCorp's "contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment" (42 U.S.C. § 6972(a)(1)(B)). That claim will ripen on September 27, 2007.

b. Defendant's Statement.

Depending upon the Court's rulings on PacifiCorp's pending Motions, PacifiCorp may or may not oppose Plaintiffs' motion seeking leave to amend. Except to answer or move to dismiss any RCRA claim that the Court may allow Plaintiffs to assert, PacifiCorp does not presently contemplate filing any amended answer.

///

///

**6. EVIDENCE PRESERVATION.**

a. Plaintiffs' Statement.

Plaintiffs' documents exist primarily in paper form. Plaintiffs have been instructed not to discard or destroy any documents in paper or electronic form. Plaintiffs believe that the parties and their counsel fully understand their document preservation obligations, and that PacifiCorp has made no showing to support a preservation order. Should this Court nevertheless determine that a preservation order is appropriate, Plaintiffs request that any such order apply to all parties.

b. Defendant's Statement.

PacifiCorp has issued a "litigation hold" on documents, both paper and electronic, relating to the issues apparent in the Complaint and sent to all persons reasonably believed to have information relating to the issues raised in the Complaint. PacifiCorp requests that Plaintiffs be instructed not to discard or destroy any electronic documents, including electronic mail, relevant to the issues in the Complaint.

**7. DISCLOSURES.**

a. Plaintiffs' Position.

As set forth in the parties' joint Rule 26(a) statement dated August 2, 2007, Plaintiffs take the position that the parties agreed to defer the exchange of Rule 26(a) disclosures pending a ruling on PacifiCorp's motions to dismiss and/or stay. Because PacifiCorp now takes the position that the parties agreed to defer a discovery plan, but despite the pendency of (i) a potentially dispositive motion and (ii) PacifiCorp's position that this Court should "consideration of the damages claims until FERC has completed its analysis" (*see* ¶ 16.b, below), did not agree to defer initial disclosures, Plaintiffs will produce their Rule 26(a) disclosures in the near future.

b. Defendant's Position.

PacifiCorp agreed to defer preparation of a Rule 26(f) discovery plan pending a ruling on PacifiCorp's pending motions, but expressly stated in the July 13, 2007 meet and confer session that it wanted to proceed with initial disclosures to learn the basis of Plaintiffs' damages claims. On August 1, 2007, PacifiCorp learned that Plaintiffs did not intend to make initial disclosures on August 2. PacifiCorp provided an initial disclosure on August 2, 2007.

**8. DISCOVERY.**

No discovery has been taken at this time. The parties agree that identification of the scope of discovery, proposed limitations or modifications of discovery rules, and a proposed discovery plan would be better addressed after the Court rules on PacifiCorp's Motions, which will inform the parties about the issues remaining in this action.

**9. CLASS ACTIONS.**

This action is not a class action.

**10. RELATED CASES.**

a. Plaintiffs' Position.

There are no related cases before any court or agency with authority to order the remedies Plaintiffs seek in this litigation.

b. Defendant's Position.

The PacifiCorp dam operations challenged in this action are the subject of a pending re-licensing proceeding at FERC, entitled PacifiCorp/Klamath Hydroelectric Project, Docket No. P-2082. Such operations are also the subject of a pending proceeding at the California State Water Resources Control Board (SWRCB") regarding certification under Clean Water Act § 401.

**11. RELIEF.**

a. Plaintiffs' Position.

Plaintiff seek their damages, according to proof, and an appropriate injunction requiring PacifiCorp to cease discharging contaminants into the Klamath River.

b. Defendant's Position.

PacifiCorp does not seek relief in this action. Plaintiffs have not described their damages with sufficient detail to allow PacifiCorp to describe how it would calculate damages if liability were proven. Given what little has been described about the claimed damages, PacifiCorp believes that each Plaintiff claiming damage to their fishing interests would need to prove a property right in the fish not caught by them and then, for each year within the applicable statute of limitations, the number of fish that they would have caught absent PacifiCorp's operations and

the market value of such fish. As to Plaintiff Attebury, who claims an illness possibly related to PacifiCorp's operations, his damages would be calculated based on any lost income.

**12. SETTLEMENT AND ADR.**

a. Plaintiffs' Position.

Members of the Karuk and Yurok tribes have previously participated in good faith in mediation with PacifiCorp concerning PacifiCorp's contamination of the Klamath, and those proceedings have not proven fruitful. Based on prior experience, Plaintiffs do not believe that alternative dispute resolution would be productive in this case.

b. Defendant's Position.

As set forth in its Motion, PacifiCorp believes that this Court lacks jurisdiction to grant the injunctive relief sought in this action, that PacifiCorp is entitled to judgment on the pleadings on certain claims, and that all remaining claims should be dismissed or stayed until the FERC re-licensing proceeding is complete. PacifiCorp is currently addressing the issues raised in this Complaint, regarding PacifiCorp's hydropower operations, with the same parties before FERC, the SWRCB, and the North Coast Regional Water Quality Control Board. PacifiCorp does not believe that settlement discussions or ADR would be fruitful at this time. If the Court allows any claims to proceed at this time, then ADR might be fruitful after initial discovery regarding the basis for these individual Plaintiffs' damages claims.

**13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES.**

a. Plaintiffs' Position.

Plaintiffs consent to a Magistrate Judge for any or all purposes.

b. Defendant's Position.

PacifiCorp does not consent to a Magistrate Judge for all purposes.

**14. OTHER REFERENCES.**

The parties do not believe that any other reference is necessary or appropriate.

///

///

///

**15. NARROWING OF ISSUES.**

The parties agree that any further effort to narrow the issues will be be better addressed after the Court rules on PacifiCorp's pending motions, which will inform the parties about the issues remaining in this action.

**16. EXPEDITED SCHEDULE.**

a. Plaintiffs' Position.

The issues in this case are straightforward, and the threat to human health and tribal culture imminent. In addition, the contamination of Klamath waters has been extensively studied by experts for PacifiCorp and experts for the Yurok and Karuk tribes. FERC will not resolve the issues this case resolved, as FERC lacks authority to adjudicate Plaintiffs' common law claims or provide Plaintiffs with any damages remedy. Accordingly, Plaintiffs believe that this case can be assigned to an expedited schedule, as the time required for the parties to have a full and fair opportunity to fact and expert discovery will be shorter than it would have been without the extensive prior expert analysis that has already taken place. PacifiCorp's accusation that "Plaintiffs have brought this litigation in an effort to influence or thwart FERC's consideration of PacifiCorp's relicensing application" is both baseless and irrelevant to the case scheduling issues before this Court.

b. Defendant's Position.

PacifiCorp does not believe that this case is appropriate for an expedited schedule. PacifiCorp's dams that are the subject of this litigation have been operating for over 50 years. Plaintiffs have brought this litigation in an effort to influence or thwart FERC's consideration of PacifiCorp's relicensing application. Numerous experts are studying water quality in the Klamath River system, including blue green algae, and these issues are under consideration by FERC, the SWRCB and other governmental agencies. If this Court does not dismiss Plaintiffs' injunctive relief claims, and defer consideration of the damages claims until FERC has completed its analysis, this case will require determination of the source, cause, extent and effect of water quality conditions in the Klamath River system, both above and below PacifiCorp's Iron

Gate and Copco dams. This will require lengthy expert preparation and discovery, as well as discovery into the Plaintiffs' individual damages claims.

**17. SCHEDULING.**

The parties agree that this Court can best address case scheduling generally after ruling on PacifiCorp's motions to dismiss and/or stay, which will inform the parties about the scope of issues remaining in this action, whether the case is stayed, and thus what must be done to ready the case for trial.

a. Plaintiffs' Position re: Status Conference.

Plaintiffs request that this Court convene a status conference within 15 days of ruling on PacifiCorp's pending motions to set a case schedule.

b. Defendant's Position re: Status Conference.

PacifiCorp requests that the Court set a status conference 15 days after the parties submit a Rule 26(f) discovery plan, which will occur four weeks after the Court rules on PacifiCorp's pending motions.

**18. TRIAL.**

a. Jury Trial.

Plaintiffs have requested a jury trial.

b. Length of Trial.

i. Plaintiffs' Position. The parties will be in a better position to estimate the length of trial after this Court rules on PacifiCorp's pending Motions, in that the ruling will determine in party the scope of the issues to be tried. In any event, Plaintiffs estimate that the trial of this case will take no more than 15 days, and need not await any regulatory proceedings.

ii. Defendant's Position. At present, the Complaint presents issues being addressed in several administrative proceedings. Activities in only one proceeding, conducted by the Department of the Interior and the National Marine Fisheries Service ("NMFS") involved "the submission of thousands of pages of written direct and rebuttal testimony" and "over forty-five hours of hearing." *Klamath Hydroelectric Project*, 2006-NMFS-0001 (Sept. 27, 2006). If

the issues in this action continue to duplicate the issues being raised in the FERC and SWRCB proceedings, PacifiCorp would estimate approximately 100 trial days.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.**

a. Plaintiffs.

None.

b. Defendant.

As previously identified in response to Local Rule 3-16, the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: (a) PacifiCorp, Inc. is a wholly owned subsidiary company of MidAmerican Energy Holdings Company; and (b) MidAmerican Energy Holdings Company is owned by Berkshire Hathaway Inc. and certain natural persons.

DATED: August 9, 2007. Respectfully submitted,

**COTCHETT, PITRE & McCARTHY**
Joseph W. Cotchett
(SBN 36324; JCotchett@cpmlegal.com)
Barbara L. Lyons
(SBN 173548; BLyons@cpmlegal.com)

**LAWYERS FOR CLEAN WATER, INC.**
Daniel G. Cooper
(SBN 153576; cleanwater@sfo.com)

**KENNEDY & MADONNA, LLP**
Robert F. Kennedy, Jr.
(*Pro Hac Vice*; mpostman@law.pace.edu)
KEVIN J. MADONNA
(*Pro Hac Vice*:
kmadonna@kennedymadonna.com)

By: [signature]
Joseph W. Cotchett
Attorneys for Plaintiffs
**HOWARD McCONNELL; LEAF G. HILLMAN; ROBERT ATTEBERY; FRANKIE JOE MYERS; TERANCE J. SUPAHAN; MICHAEL T. HUDSON; BLYTHE REIS; and KLAMATH RIVERKEEPER**, a project of **KLAMATH FOREST ALLIANCE**

**LATHAM & WATKINS LLP**
Karl S. Lytz (SBN 110895)
Richard W. Raushenbush
(SBN 134983)
Benjamin J. Horwich (SBN 249090)
Randi L. Wallach (SBN 241171)

By: Richard W. Raushenbush /RWR
Richard W. Raushenbush@lw.com
Attorneys for Defendant
**PACIFICORP, INC.**, an Oregon Corporation