1  LATHAM & WATKINS LLP
   Karl S. Lytz (Bar No. 110895)
2     Richard W. Raushenbush (Bar No. 134983)
   Benjamin J. Horwich (Bar No. 249090)
3     Randi L. Wallach (Bar No. 241171)
505 Montgomery Street, Suite 2000
4  San Francisco, California 94111-2562
Telephone: (415) 391-0600
5  Facsimile: (415) 395-8095
Email:
6     Karl.Lytz@lw.com
   Richard.Raushenbush@lw.com
7     Benjamin.Horwich@lw.com
   Randi.Wallach@lw.com
8
Attorneys for Defendant
9  PACIFICORP, an Oregon Corporation

10  **UNITED STATES DISTRICT COURT**

11  **NORTHERN DISTRICT OF CALIFORNIA**

12

13  **KLAMATH RIVERKEEPER,** a nonprofit public benefit corporation; **HOWARD McCONNELL**; **LEAF G. HILLMAN**;
14  **ROBERT ATTEBERY**; and **BLYTHE REIS**;
15
               Plaintiffs,
16
17      v.

18  **PACIFICORP, INC.,** an Oregon Corporation;
19
               Defendant.
20

CASE NO.: C 07-06199 WHA

**DEFENDANT PACIFICORP'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DUPLICATIVE SUIT**

Date:   February 14, 2008
Time:   8:00 a.m.
Place:   Courtroom 9, 19th Floor

Judge: Hon. William H. Alsup

21
22
23
24
25
26
27
28

1    PacifiCorp's Motion to Dismiss presents two questions:  First, under the rule

2    against claim-splitting, is this suit ("*Riverkeeper*") duplicative of Plaintiffs' other suit,

3    *McConnell v. PacifiCorp*, No. 07-2382 ("*McConnell*")?  And if so, how should the Court

4    respond to this needless multiplicity of actions?

5    On the first question, Plaintiffs all but concede the suits are duplicative.  They

6    admit (as they must) that *McConnell* and *Riverkeeper* concern the same transactional nucleus of

7    facts—the "most important" factor in deciding whether suits are duplicative for claim-splitting

8    purposes.  *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir.) (quoting *Costantini*

9    *v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)), *cert. denied*, 169 L. Ed. 2d

10   607 (2007).  Their feeble arguments on the other relevant (but less important) factors also fail;

11   *Riverkeeper* is obviously duplicative.

12   On the second question, Plaintiffs' opposition incredibly fails to mention the

13   elephant in the room:  this Court's August 16, 2007, Case Management Order in *McConnell*

14   ("*McConnell* CMO").  The *McConnell* CMO gave Plaintiffs until September 27, 2007, to amend

15   the *McConnell* complaint to add the very claim now asserted in *Riverkeeper*.  Plaintiffs did not

16   meet that deadline to amend, they waited months to file *Riverkeeper* as a separate suit, and they

17   have never explained their manifest lack of diligence (or why they had to file *Riverkeeper* as a

18   <u>separate</u> lawsuit).  That lack of diligence clearly counsels against consolidating *Riverkeeper* with

19   *McConnell*, and it aligns the situation here perfectly with the situation in *Adams*, where the

20   district court dismissed the second suit with prejudice.  The Court should do the same here.

21   **I.    THE *RIVERKEEPER* SUIT IS DUPLICATIVE**

22   Plaintiffs agree that *Adams* supplies the test for whether a suit is duplicative:  The

23   Court "examine[s] whether the causes of action and relief sought, as well as the parties or privies

24   to the action are the same."  487 F.3d at 689 (citing *The Haytian Republic*, 154 U.S. 118, 124

25   (1894)).  Whether two causes of action are the same in turn depends on "(1) whether rights or

26   interests established in the prior judgment would be destroyed or impaired by prosecution of the

27   second action; (2) whether substantially the same evidence is presented in the two actions; (3)

28   whether the two suits involve infringement of the same right; and (4) whether the two suits arise

1

1   out of the same transactional nucleus of facts.  The last of these criteria is the most important."

2   *Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

3          Plaintiffs do not dispute that the same parties are involved.  But they contend that

4   "the causes of action in the two cases are not identical," Pl. Opp. at 6, and that "the remedy

5   sought by Plaintiffs in [*Riverkeeper*] is entirely different from that available in [*McConnell*]," Pl.

6   Opp. at 4.  They are flat wrong on both counts.

7       **A.**     ***McConnell* And *Riverkeeper* Arise Out Of The Same Transactional Nucleus**

8                 **Of Facts**

9          Plaintiffs concede that *McConnell* and *Riverkeeper* arise out of the same

10  transactional nucleus of facts.  Pl. Opp. at 4 ("[T]he transactional facts in the Nuisance Action

11  and the RCRA action are substantially similar.").  Nowhere in their brief do Plaintiffs argue

12  otherwise, and their Related Case Motion <u>admits</u> the point even more emphatically:

13  "[*McConnell* and *Riverkeeper*] . . . concern the same transaction or events."  RJN, Ex. 2

14  (*McConnell* Related Case Motion) at 1.

15         This factor is the "'most important,'" *Adams*, 487 F.3d at 689 (quoting *Costantini*,

16  681 F.2d at 1202), and usually outcome-determinative, *see Int'l Union v. Karr*, 994 F.2d 1426,

17  1430 (9th Cir. 1993) (citing res judicata cases where the court did not need to look beyond the

18  "transactional nucleus" factor).  Indeed, this factor is so overwhelming that Plaintiffs cite <u>not one</u>

19  <u>case</u> in which the two actions shared a transactional nucleus of facts, yet were somehow not "the

20  same" for res judicata or claim-splitting purposes.

21         Plaintiffs attempt to compensate for this total lack of support in the caselaw by

22  hypothesizing that satisfying the "transactional nucleus of facts" factor is sufficient on its own

23  only "where it appears that prejudice will be suffered by the defendant if the second action is

24  allowed to proceed."  Pl. Opp. at 3 (citing cases where the "transactional nucleus of facts" factor

25  was determinative).  The problem with Plaintiffs' self-invented and self-serving legal theory is

26  that <u>nowhere in any of those cases does the Ninth Circuit mention prejudice to the defendant</u>, or

27  even say in dicta that prejudice would be relevant to the "same cause of action" determination.

28  Nor is there a logical reason to think that whether two cases are "the same" has anything to do

1   with whether that determination might prejudice a party.  Worse yet, Plaintiffs stack the deck in

2   choosing cases to analyze:  Every case in the string citation on page 3 of their opposition is a res

3   judicata case—in such cases, by definition, the first suit has ended in a judgment for the

4   defendant, and permitting the second case to proceed would prejudice the closure the defendant

5   enjoyed from that prior judgment.  At bottom, Plaintiffs have simply invented a convenient

6   rationalization of a selective set of caselaw—all in the service of an illogical rule.

7           The law is that the "transactional nucleus of facts" factor is ordinarily controlling.

8   This factor is quintessentially satisfied here, so *Riverkeeper* is duplicative of *McConnell*.  The

9   Court need not proceed further, though an examination of the less important factors further

10  supports a finding that *Riverkeeper* is duplicative of *McConnell*.

11          **B.      The Same Rights And Interests That Will Be Established In *McConnell***

12                  **Would Be Adjudicated In *Riverkeeper***

13          The essential error in Plaintiffs' analysis of this factor lies in their choice to frame

14  the issue in terms of legal theories, instead of general rights and interests.  Plaintiffs point out

15  that "a ruling that PacifiCorp has created a nuisance will not establish imminent and substantial

16  endangerment for purposes of RCRA."  Pl. Opp. at 8.  That is doubtless true—by definition, two

17  different legal theories will have different elements—but it is beside the point:  As the Ninth

18  Circuit's analysis of this factor in *Adams* illustrates, the question is not whether the elements of a

19  new legal theory are slightly different from the elements of an old legal theory.  In *Adams* (which

20  arose out of a disputed employment background investigation), the question was not whether

21  proof of a breach of the covenant of good faith and fair dealing (in the first suit) was also a

22  violation of the Fair Credit Reporting Act (in the second suit).  Rather, what mattered to the

23  Ninth Circuit was that "the legality . . . of Adams' background investigation" was raised in both

24  cases.  487 F.3d at 690; *accord Costantini*, 681 F.3d at 1202 (both suits raised "TWA's freedom

25  from liability for the loss of appellant's license agreement").

26          Likewise here, the salient "rights and interests" are not defined by legal tests.

27  Rather, just as PacifiCorp stated in its Motion to Dismiss at page 8, the rights and interests at

28  stake are PacifiCorp's responsibility, or lack thereof, for allegedly causing blooms of *Microcystis*

3

1  *aeruginosa* ("MSAE") to grow and spread in the Klamath River.  That responsibility is at stake

2  in both *McConnell* and *Riverkeeper*, which confirms that *Riverkeeper* is duplicative.

3        **C.       Substantially The Same Evidence Will Be Presented In *McConnell* And In**

4             ***Riverkeeper***

5        Plaintiffs first concede that "there will be overlapping evidence" in *McConnell*

6  and *Riverkeeper*—and go on to list nearly every relevant topic in the cases ("concentration,

7  volume, and discharge locations of the *microcystin* algae and the associated toxin, as well as

8  impacts to human health and the environment").  Pl. Opp. at 7.  But in the next breath, Plaintiffs

9  maintain that the evidence required to adjudicate *McConnell* will be "significantly different"

10  from the evidence required to adjudicate *Riverkeeper*.  Pl. Opp. at 7.  They point to issues in

11  *Riverkeeper* such as "whether the *microcystin* algae and toxic waste are solid waste as defined by

12  RCRA" and "whether PacifiCorp is contributing to the handling, storage, treatment,

13  transportation, or disposal of that solid waste."  Pl. Opp. at 7.

14        Plaintiffs' argument mixes up evidence (documents and testimony) and legal

15  conclusions (which are proven or disproven by evidence):  Of course the legal issues will be

16  different for different legal theories.  But in all likelihood, the relevant fact and opinion <u>evidence</u>

17  will be very much the same.  For example, scientific studies and testimony about the causes of

18  MSAE proliferation may shed light on whether PacifiCorp's day-to-day operations are the

19  proximate cause of that proliferation (a salient question for the state law theories in *McConnell*),

20  and that same evidence may shed light on whether PacifiCorp is contributing to the handling,

21  storage, treatment, transportation, or disposal of the MSAE (a salient question under RCRA in

22  *Riverkeeper*, assuming that MSAE is even "solid waste" to begin with).[1]

23        Even if there would not be perfect overlap in the evidentiary presentations in

24  ───────────────
   [1] Plaintiffs also digress into the evidence required to establish subject matter jurisdiction in the

25     two cases.  But Plaintiffs get the law wrong:  The $75,000 amount-in-controversy threshold
      of 28 U.S.C. § 1332 is tested against the allegations of the complaint, not evidence.  *See, e.g.*,

26     *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).  And Article III
      standing must be satisfied for both the state law claims of *McConnell* and the federal law

27     claim of *Riverkeeper*.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)
      (Article III standing is required and determined by federal law for all cases in federal court).

28

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

Defendant's Reply In Support Of Motion To Dismiss
CASE NO. C 07-06199 WHA

1   *McConnell* and *Riverkeeper*, it seems quite safe to say that the Court would be presented with

2   "*substantially* the same evidence" about MSAE and microcystin. Indeed, this is almost verbatim

3   what Plaintiffs wrote in their Related Case Motion: "The Judge [in *McConnell* and *Riverkeeper*]

4   will be presented with substantially similar information on these pollutants." RJN, Ex. 2

5   (*McConnell* Related Case Motion) at 3. Accordingly, this factor also weighs in favor of finding

6   that *McConnell* and *Riverkeeper* assert the same cause of action for claim-splitting purposes.

7       **D.    *McConnell* And *Riverkeeper* Involve Alleged Infringement Of The Same**

8            **Rights**

9            Without citation or argument, Plaintiffs assert that "[c]learly [*McConnell*],

10  involving the creation of a nuisance under state law, and [*Riverkeeper*], alleging violations of the

11  Federal Statute regulating the handling, treatment, storage, and disposal of solid and hazardous

12  waste, do not involve infringement of the same right." PacifiCorp explained in its Motion to

13  Dismiss at pages 8-9 that these cases invoke the same right because both involve allegations that

14  Plaintiffs' (and the public's) right to a clean, healthy Klamath River environment has been

15  infringed by PacifiCorp's operation of the Project. Plaintiffs do nothing to refute that.

16          Moreover, the broader position Plaintiffs seem to take—that state nuisance law

17  and federal environmental laws vindicate different rights—flatly contradicts the history and

18  structure of federal environmental law: "'To a surprising degree, the legal history of the

19  environment has been written by nuisance law. . . . Nuisance theory and case law is the common

20  law backbone of modern environmental and energy law.'" J. Sevinsky, Public Nuisance: A

21  Common-Law Remedy Among the Statutes, *Natural Resources and Environment*, Summer

22  1990, at 29, 30 (quoting W. Rodgers, *Environmental Law: Air and Water* 1-2 (1986)). In fact,

23  RCRA and other federal environmental laws have the closest possible relationship with common

24  law nuisance: They have displaced the federal common law of nuisance. *See Nez Perce Tribe v.*

25  *Idaho Power Co.*, 847 F. Supp. 791, 815 n.28 (citing *Milwaukee v. Illinois*, 451 U.S. 304, 317-19

26  (1981) (Clean Water Act displaces federal common law of nuisance); *United States v. Kin-Buc,*

27  *Inc.*, 532 F. Supp. 699 (D.N.J. 1982) (Clean Air Act displaces federal common law of nuisance);

28  *United States v. Price*, 523 F. Supp. 1055, 1069 (D.N.J. 1981) (RCRA and CERCLA displace

1   federal common law of nuisance), *aff'd*, 688 F.2d 204 (3d Cir. 1982)).  In effect, *McConnell* is a

2   suit under state nuisance law, and *Riverkeeper* is a suit under the statutory successor to federal

3   nuisance law.  The rights allegedly infringed in these two suits could scarcely be more alike, so

4   this factor weighs strongly in favor of finding that *McConnell* and *Riverkeeper* assert the same

5   cause of action for claim-splitting purposes.

6                 **E.      *McConnell* And *Riverkeeper* Seek Substantially The Same Relief**

7                 Plaintiffs argue that the unavailability of injunctive relief on the state law claims

8   in *McConnell* means that their claim for injunctive relief in *Riverkeeper* is not duplicative.  Pl.

9   Opp. at 5-6.  Two essential contradictions undermine this argument.  First, these same Plaintiffs

10  contended, at the time they filed *McConnell*, that injunctive relief *was* available in *McConnell*.

11  In opposing PacifiCorp's motion for judgment on the pleadings, they again contended that

12  injunctive relief was available in *McConnell*.  And they apparently still believe injunctive relief

13  should be available in *McConnell*—even in briefing this motion, Riverkeeper emphasizes that it

14  "reserves its right to challenge [the injunction] element of the Court's [*McConnell*] ruling on

15  appeal."  Pl. Opp. at 1 n.1.  These same Plaintiffs cannot simultaneously pretend in their defense

16  of this motion that injunctive relief never was available or sought in *McConnell*.  Second, when a

17  plaintiff faces a motion to dismiss based on res judicata or the rule against claim-splitting, that

18  plaintiff invariably got there by filing a second lawsuit after being disappointed by the results of

19  the first lawsuit.  In other words, that plaintiff was disappointed <u>by the unavailability in the first

20  suit of the relief he desired</u>.  That disappointment is exactly what Plaintiffs say their motivation

21  was here.  *See* Pl. Opp. at 5-6.  At bottom, there is little to distinguish *Riverkeeper* from the run-

22  of-the-mill duplicative suit filed by a plaintiff disappointed with the progress of an earlier suit.

23                 Two other points bear brief mention:  First, Plaintiffs do not quarrel with

24  PacifiCorp that, where claim-splitting is concerned, RCRA civil monetary penalties (sought in

25  *Riverkeeper*) are essentially the same relief as punitive damages (sought in *McConnell*).  Second,

26  even though Plaintiffs emphasize a supposed mismatch of remedies between *McConnell* and

27  *Riverkeeper*, they cite no case in which such a difference was outcome determinative, or even

28  seriously considered in the court's analysis.  Hence, even if the Court sees an imperfect

6

1    correspondence between the remedies available in *McConnell* and in *Riverkeeper*, it should still

2    find *Riverkeeper* duplicative on the basis of the factors above.

3    **II.    THE COURT SHOULD DISMISS *RIVERKEEPER***

4          *Adams* holds that, following a finding that a suit is duplicative, this Court has (at

5    least) four options:  dismiss *Riverkeeper* with prejudice; dismiss *Riverkeeper* without prejudice

6    (and remit Plaintiffs to a motion to modify the *McConnell* CMO and amend the *McConnell*

7    complaint under the exacting "good cause" standard of Fed. R. Civ. P. 16); simply consolidate

8    *Riverkeeper* with *McConnell*; or stay *Riverkeeper*.  487 F.3d at 688, 692.  This Court has "an

9    ample degree of discretion, appropriate for disciplined and experienced judges" in making this

10   choice, and as *Adams* itself demonstrates, the Court of Appeals is unlikely to disturb that choice.

11   *Id.* at 692 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).

12         Plaintiffs suggest that the Court consolidate *Riverkeeper* with *McConnell*, arguing

13   that PacifiCorp fails to demonstrate prejudice from allowing *Riverkeeper* to proceed.  Pl. Opp. at

14   8.  Plaintiffs argue that the alternative (dismissal) is appropriate only when the "defendant would

15   suffer significant prejudice if the second action was allowed."  Pl. Opp. at 8.  Once again,

16   <u>Plaintiffs have made up a legal rule that does not appear in the caselaw</u>—and worse yet, the only

17   cases they cite are res judicata cases, where the court had no choice but to dismiss the second

18   action.  When it comes to cases about claim-splitting—like *Adams* and *Hartsel Springs Ranch of*

19   *Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002)—prejudice to the defendant has

20   never been required, or even relevant.  In fact, *Adams* devotes three pages to discussing the

21   dismissal remedy, but <u>never even mentions prejudice</u> (or lack of prejudice) to the defendant of

22   allowing the second action to proceed—let alone give it the exclusive focus and dispositive

23   weight that Plaintiffs do.  *See* 487 F.3d at 692-94.

24         What *Adams* does discuss at length is <u>diligence</u>, *see id.* at 693, and that is what

25   Plaintiffs lack here.  PacifiCorp's Motion to Dismiss at pages 4-5 detailed Plaintiffs' indolence in

26   bringing their RCRA claim:  how they filed a notice of suit on June 27, 2007; how they failed to

27   amend the *McConnell* complaint by September 27, 2007, when that notice had ripened (despite

28   their announced intention to do so); and how months later they elected to file a "new" complaint

7

1    that is entirely derivative of the *McConnell* complaint.  Plaintiffs scarcely acknowledge this

2    timeline, or the inescapable conclusion that this entire proceeding is the product of their reckless

3    failure to amend the *McConnell* complaint within the time limits in the *McConnell* CMO.

4              The closest Plaintiffs come to addressing this central issue is a cryptic offer

5    "during oral argument . . . to provide the background on the decision to file a new action rather

6    than amending the Nuisance Action."[2]  Pl. Opp. at 2 n.2.  Plaintiffs also say their "decision to

7    bring the separate RCRA Action was based in large measure on the availability of injunctive

8    relief under RCRA."  Pl. Opp. at 5.  This is revisionist at best—and outright deceptive at worst.

9    First, one hopes that the decision to bring the RCRA action was not actually "based in large

10   measure on the availability" of certain relief, but rather based on a good faith belief in the merit

11   of the claim asserted.  Second, bringing a RCRA claim has nothing to do with filing a separate

12   suit—until they missed the September 27 deadline in the *McConnell* CMO, Plaintiffs had vowed

13   to add the RCRA claims by amendment to *McConnell*.  *See* RJN, Ex. 3 (*McConnell* Joint CMC

14   Statement) at 10.  Third, Plaintiffs present the decision to file the RCRA action as if it were a

15   new idea that occurred to them after the Court ruled in *McConnell* that injunctive relief on state

16   law theories was preempted by the Federal Power Act.  But Plaintiffs sent their notice of intent to

17   sue under RCRA on June 27, 2007, and PacifiCorp did not even brief the Federal Power Act

18   preemption issue until it sought judgment on the pleadings on July 12, 2007.  *See* RJN, Ex. 6

19   (*McConnell* docket report).

20             All this shows why consolidation of *Riverkeeper* with *McConnell*—Plaintiffs'

21   proposed remedy for the delay, disruption, and multiplicity they have caused—would be so

22   inappropriate.  Consolidation would put Plaintiffs in as good a position as if they had diligently

23   amended the *McConnell* complaint.  That result can hardly be equitable—the Ninth Circuit

24   describes a court's decision on the remedy for a duplicative suit as "weighing the equities of the

25   case," *Adams* at 688, and of course, a "lack of diligence precludes equity's operation," *Pace v.*

26   _____

27   [2] Obviously, PacifiCorp cannot respond in this brief to the unstated "background on the decision
        to file a new action."

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *DiGuglielmo*, 544 U.S. 408, 419 (2005) (citations omitted).

2                Accordingly, dismissal of *Riverkeeper* is appropriate here.  As discussed in

3    PacifiCorp's Motion to Dismiss at pages 10-12, this case is indistinguishable from *Adams*, where

4    the second suit was dismissed with prejudice.  The only conceivable factual distinction to be

5    drawn between these cases and the *Adams* cases is that Adams had tried to make a late

6    amendment to the complaint in her first suit.  But the Ninth Circuit does not even mention that

7    motion in its lengthy discussion of why the district court was within its discretion to dismiss

8    Adams' second suit—suggesting that Adams' motion to amend was irrelevant to whether her

9    second suit should be dismissed with prejudice.  *See Adams*, 487 F.3d at 692-94.  If anything,

10   Adams' motion to amend made her *more* diligent than Plaintiffs here—who simply waited

11   silently for months to file anything, after they missed the September 27, 2007, deadline in the

12   *McConnell* CMO.

13               The Court would also be within its discretion to dismiss *Riverkeeper* without

14   prejudice, to allow Plaintiffs to move to modify the *McConnell* CMO and amend the *McConnell*

15   complaint under the "good cause" standard of Fed. R. Civ. P. 16.  That said, Plaintiffs still have

16   not explained their apparent lack of diligence (despite an obvious opportunity to do so in their

17   opposition brief), which raises serious questions about whether Plaintiffs can show "good cause."

18   Hence, embarking on a dismissal without prejudice, followed by a dubious motion to modify the

19   *McConnell* CMO and amend the *McConnell* complaint, holds a serious risk of further increasing

20   *Riverkeeper*'s already considerable unnecessary expense to PacifiCorp.  Accordingly, if the

21   Court is inclined to dismiss *Riverkeeper*, but without prejudice, PacifiCorp respectfully suggests

22   that the Court may wish first to consider ordering Plaintiffs to proffer their basis for believing

23   they can meet the "good cause" standard in *McConnell*.

24   Dated:  January 31, 2008                      Respectfully submitted,

25                                                 LATHAM & WATKINS LLP

26

27                                                 By:_____/s/_____

28                                                      Richard W. Raushenbush
                                                        Attorneys for Defendant PACIFICORP

                                         9